## ALSOBROOK *et al. v.* ORR *et al.**

## (*Jackson.* April Term, 1914.)

1. **DESCENT AND DISTRIBUTION.** Agreements between heirs. **Right of infant devisee.**

An agreement between the others entitled to share in the estate of the deceased person is not binding on an infant heir. (*Post, p. —.*)

2. **LIMITATION OF ACTIONS.** Statutes. **Applicability.**

The ten years' limitation, prescribed by Shannon's Code, sec. 4473, does not apply to a suit in equity wherein no technical ·relief is sought, as a bill to perpetuate testimony; hence such limitation does not apply to an action for the purpose of setting .up a lost will, so as to furnish complainants with color of title to land held by them, and to which defendants were asserting claims. (*Post, p. —.*)

Code cited and construed: Secs. 4473, 2761 (S.).

Case cited and distinguished: Everitt v. Everitt, 41 Barb., 385.

Cases cited and approved: Alvis v. Oglesby, 87 Tenn., 172; Hughes v. Brown, 88 Tenn., 578; Lewis v. Brooks, 14 Tenn., 167; Anderson v. Akard, 83 Tenn., 182; Caldwell v. Palmer, 74 Tenn., 652; Kirtland v. Railroad Co., 72 Tenn., 414; Ballard v. Scruggs, 90 Tenn., 585; Blackwell v. Railway, 124 Tenn., 516.

3. **WILLS.** Lost wills. **Establishment. Laches.**

As Shannon's Code, sec. 3955, does not limit the period for the probate of wills, the right of devisees in possession of land to set up a lost will, so that it would furnish them color of title against possible claims by defendants, who were also devisees of other land, is not barred by twenty years' delay, where the situation of the parties was not changed in the meantime. (*Post, p. —.*)

Code cited and construed: Sec. 3955 (S.).

---

*Upon the effect of delay in probating lost will, see note in 57 L. R. A., 258.

Case cited and approved:   Scott v. Wagstaff, 120 Tenn., 252.

Cases cited and distinguished:   Grier v. Canada, 119 Tenn., 17;
Anderson v. Akard, 83 Tenn., 182; Parker v. Bethel Hotel Co.,
96 Tenn., 252; Townsend v. Townsend, 44 Tenn., 70; Gibson v.
Lane, 17 Tenn., 475.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.
—F. H. Heiskell, Judge.

Wilson & Armstrong, for appellants.

W. G. Cavett, for appellees.

Mr. Justice Green delivered the opinion of the
Court.

This bill was filed for the purpose of setting up the
lost will of N. T. Alsobrook.   There was a decree es-
tablishing the will in the court below, affirmed by the
court of civil appeals, and defendants have brought the
case to this court on *certiorari*.

N. T. Alsobrook died in Shelby county in 1890.   He
left a will by which he devised four hundred and eighty
acres of land in Mississippi to his children by his first
wife.   He devised two tracts of land in Shelby county,
Tennessee, to his second wife, and his child by her, as
well as certain personal property.   There were some
limitations upon the devise to the second wife and
her child which it is not necessary to notice here.

Shortly after the testator's death, his will was filed
for probate in Shelby county, Tennessee, and the rec-

ords in the office of the county court clerk show that it was partially enrolled. There was no order of the county court admitting it to probate, but a part of the will was copied, and, after the portion of the will copied, there appears an entry in the will book in the handwriting of the clerk at that time, "not admitted to probate as yet."

It seems that the second wife of testator, who survived him, was dissatisfied with certain of the limitations upon the devise made to her and her child, and she and the children by the first wife entered into a written agreement whereby the entire estate was apportioned. The probate of the will was not completed. The Mississippi heirs took the property in that State, by this joint agreement, and by the same instrument the property in Tennessee was conveyed to the widow for her life, with remainder to her son, Ashley Alsobrook. The children by the first wife, the Mississippi heirs, were of age at this time, but Ashley Alsobrook was a young child.

Since the death of the testator, his children by his first wife have been in possession of the Mississippi land, claiming it as their own, and his widow has been in possession of the Tennessee land, claiming a life estate therein, with remainder in favor of her son, Ashley Alsobrook.

It is not altogether clear whether the Mississippi children have claimed under the will or under the aforesaid contract. Some of the present complainants, grandchildren of the testator, say they supposed

their title was derived from N. T. Alsobrook's will. The children of N. T. Alsobrook by his first wife were all of age, however, at the time the said agreement was executed, and it is argued that all this branch of the family must be adjudged to hold under the contract. We do not think this question is material. The Mississippi heirs have been in possession of the land there, claiming it as their own ever since the death of N. T. Alsobrook. As has been said, Ashley Alsobrook was an infant of tender years when this written agreement was made between his mother and her stepchildren, undertaking to settle the estate of N. T. Alsobrook. The agreement, therefore, of course, is not binding on him, and he has now attained his majority.

The bill alleges that "the said Ashley Alsobrook is setting up and claiming an interest in the said land hereinbefore described and situated in Mississippi, and also that in Tennessee" at the present time, and the complainants, the Mississippi heirs, seek by this will to establish N. T. Alsobrook's will as a muniment of title to the Mississippi land, to defeat the claim to said land that is now being made by Ashley Alsobrook.

Answers were filed by Ashley Alsobrook and his mother in which they interposed several defenses to the suit. Proof was taken, and the case finally heard before a jury in the chancery court at Memphis.

A number of controversies have been settled by the verdict of the jury. There is abundant evidence to support this verdict, and it must be conceded in this court that N. T. Alsobrook did make a will; that it

was in terms as heretofore indicated; and that he was mentally sound and capable of making a valid will at the time this one was executed. The proof shows that the original will filed in the clerk's office disappeared. Prior to its disappearance, the widow procured a copy of this will, however, which was produced, and its accuracy was really not disputed, and it was found by the jury to be a true copy of the last will and testament of N. T. Alsobrook. By this will, the Mississippi property was devised to the children by the first wife, as we have heretofore stated.

The only questions open to the defendants in this court arise upon their plea of the statute of limitations and laches.

It will be remembered that the testator died in 1890, and it is insisted by the defendants that this suit, brought in 1911, to set up the will of N. T. Alsobrook, is barred by section 4473 of Shannon's Code, as follows:

"Actions against guardians, executors, administrators, sheriffs, clerks, and other public officers on their bonds, actions on judgments and decrees of courts of record of this or any other State or government, and all other cases not expressly provided for, within ten years after the cause of action accrued."

Under earlier cases in Tennessee, and the statutes then existing, it was held that such statutes of limitation did not apply to suits cognizable alone in courts of equity; that is, to purely equitable remedies. Reviewing these cases and our later statutes embodied

Alsobrook v. Orr.

in the Code of 1858, this court in *Alvis v. Oglesby,* 87 Tenn., 172, 10 S. W., 313, and *Hughes v. Brown,* 88 Tenn., 578, 13 S. W., 286, 8 L. R. A., 480, indicated that every action, both in law and equity, except one between the trustee and beneficiary of an express trust, was now barred, within ten years, under section 4473, Shannon's Code, above quoted.

There is still, however, a class of suits in chancery not considered in these cases, to which our statutes of limitations do not apply. *Alvis* v. *Oglesby* and *Hughes* v. *Brown* dealt with causes of action in which demands were asserted and relief sought against defendants. The holding in *Hughes* v. *Brown* is that the statute contained in the Code of 1858 applies to "a purely equitable demand," as well as other demands.

Judge Story, in his work on Equity Pleading, 17, 19, calls attention to the fact that there are a class of bills in equity which merely ask the aid of the court against possible future injury, or as a defense against a suit in another court of ordinary jurisdiction, which are not deemed bills for relief. He says that the distinction is not formal but substantial, and involves the most important consequences. He gives as examples of the class of bills referred to, not being for relief, those filed to perpetuate testimony and to examine witnesses, *de bene esse*, bills of discovery of facts resting with the knowledge of the parties against whom they are exhibited, or the discovery of deeds, writings, or other things in their custody or power.

A number of other instances might be supposed, in which bills would be appropriate, not within the class of pleadings for technical relief. We think the present bill is such an exception.

This principle, though differently stated, prevails in Tennessee, and we have several cases to the effect that the statute of limitations cannot be invoked against a bill in equity, not seeking to recover anything, but merely brought to set up or perfect a defense in opposition to a demand which has always been resisted. That is to say, if the purpose of such a suit is to strengthen a position, or to protect a right or possession which has been constantly maintained, and no technical relief is asked, the statute does not apply.

In *Lewis* v. *Brooks*, 6 Yerg., 167, it appeared that Lewis and Brooks, two creditors of a common debtor, agreed in writing to divide whatever might be collected on their respective judgments. They left this agreement with a third person to keep, but afterwards returned and told him they had agreed to rescind the contract, whereupon he produced the paper which was taken by one of them, as was supposed by everybody, for the purpose of destroying it. Later Lewis and Brooks died. It turned out that Brooks had not destroyed the written agreement, and it fell into the hands of his administrator. The administrator of Brooks brought suit upon the agreement against the representatives of Lewis, and further proceedings were had. The original contract was made in 1802, and the rescission agreement shortly thereafter. In oppo-

sition to the suit of Brooks, administrator, the representative of Lewis in 1829 filed a bill to enjoin its further prosecution and to set up the agreed rescission. To this bill, the statute of limitations was pleaded, and this court said:

"No statute of limitations has any application to this case. The complainants do not seek to recover anything, but are, on the contrary, resisting the demand of the defendants. Time operates as evidence, and in many cases a bill will not be entertained after a great lapse of time, because such length of time is proof that the party had relinquished the right for which he was contending, or that it had been extinguished, but, in a case like this, no such presumption can exist. In 1802 Lewis supposed this contract was canceled. It is not to be presumed that he knew Brooks had possession of it, nor is it likely that Brooks had any design injurious to Lewis by such possession. There was up to 1814 no knowledge on the part of Lewis or his executors that any cause of action existed. Time therefore furnishes no evidence against them. Since the suit was brought, they have been constantly resisting it, and thus constantly repelling all presumption that time otherwise might have raised." *Lewis v. Brooks,* 6 Yerg., 167-185.

In *Anderson v. Akard,* 15 Lea, 182, the bill was filed to set up a lost deed. The complainants had been in possession of the land, claiming it as their own, for many years under a deed, but said deed had never been recorded and had been mislaid. Complainants were threatened with a suit endangering their possession

of the land, and this court sustained their bill to set up the said lost deed for the protection of their title, and rejected the plea of the statute of limitations interposed by the defendants. The court said:

"Their right to set up their lost deed is one of those continuing equities, they being in legal possession, and holding against any adverse claim, of which we have several cases in our books, where the statutes of limitations have no application. 'Neither the statutes of limitations,' this court has said, 'nor lapse of time have any application to a bill in chancery, in which the complainant is not seeking to recover anything, but only resisting the demand of the defendants which they have been constantly opposing.' " *Anderson* v. *Akard,* 15 Lea, 182-193.

Other cases which less strikingly illustrate the principle, but in which it is distinctly recognized, are *Caldwell* v. *Palmer,* 6 Lea, 652, and *Kirtland* v. *Railroad Co.,* 4 Lea, 414, 418.

We think this result must be reached by a fair construction of the very language of our statute. The chapter of the Code of 1858, containing our general statute of limitation, is entitled "Of the Limitation of Actions." Section 2761 of the Code of 1858 (Shannon's Code, 4452), a part of this chapter, is as follows:

"Action Defined.—The word 'action' in this chapter includes motions, garnishments, petitions, and other legal proceedings in judicial tribunals for the redress of civil injuries."

Bills in equity which do not seek technical relief are not within the scope of this definition of the word "action." Such bills are not filed for "redress of civil injuries." They are filed to avoid civil injuries—before civil injuries are inflicted. They are filed to interpose a barrier, to set up a defense, against civil injuries. They anticipate civil injuries, and do not seek to redress them.

A like conclusion has been reached in New York in a case similar to this one. Suit was brought to set up a lost or suppressed will twenty-four years after testator's, one Everitt's, death, and the statute of limitations was invoked. The court said:

"The complaint in the present action prays that the execution of the will may be proved and its validity established to the end that it may be admitted to record, and nothing else. It does not seek to restrain the defendants from doing any future acts, nor to establish any rights or redress any wrongs to property. It seeks to recover no money or articles of personal property, or to recover and be let into the possession of real estate. In short, it asks no relief, in the technical sense of the word, against any of the defendants. It is not a case within the spirit, as it certainly is not within the letter of the statute concerning the commencing of suits in courts of equity, to which I have referred. The plaintiffs are entitled to a decree or judgment that the will be established and recorded as the will of Walter C. Everitt." *Everitt* v. *Everitt*, 41 Barb., 385.

130 Tenn. 9

We are of opinion that the court did not have in mind suits of the present character in *Alvis* v. *Oglesby,* 87 Tenn., 172, 10 S. W., 313, and *Hughes* v. *Brown,* 88 Tenn., 578, 13 S. W., 286, 8 L. R. A., 480, when interpreting the ten years' statute. The court was speaking of the actions, as that word is defined in the Code. *Ballard* v. *Scruggs,* 90 Tenn., 585, 18 S. W., 25, 25 Am. St. Rep., 703, is obviously not in point. The language of Mr. Justice Buchanan in *Blackwell* v. *Railway,* 124 Tenn., 516, 137 S. W., 486, is expressly limited to actions at law, and does not purport to include suits in equity.

It is urged, however, that the laches of complainants has been so great as to deprive them of the right to maintain this bill. It is said that these Mississippi heirs have been aware of the provisions of the will of N. T. Alsobrook, and of the fact that said will was not probated for more than twenty years; that they have offered no excuse, and have no excuse, for their delay; and that a decree should be denied them, in consequence of their negligence.

The defendants have not been at all prejudiced by complainants' delay herein. The position of the parties has not been altered, and, under the rule prevailing in this State, this is not a case in which to apply the doctrine of laches. Moreover, in *Lewis* v. *Brooks* and *Anderson* v. *Akard,* supra, it was expressly held that the defense of laches was not applicable to suits of this sort. This court has said, speaking of laches:

"In every case where the defense is founded on mere delay; that delay, of course, not amounting to a bar of any statute of limitations, the validity of that defense must be tested upon principles substantially equitable.  Two circumstances, always important in such cases, are the length of the delay, and the nature of the acts done during the interval, which might affect either party, and cause a balance of justice or injustice in taking one course or the other.  The doctrine of laches, as understood in courts of equity, implies injury to the party pleading it as a defense.  Where the situation of the parties has not been altered, and one has not been put in a worse condition by the delay of the other, the defense of laches does not generally apply." *Parker* v. *Bethel Hotel Co.,* 96 Tenn., 252-286, 34 S. W., 209, 217 (31 L. R. A., 706).

There is no statute in Tennessee limiting the time in which wills may be probated.  At the common law, no definite time was prescribed within which a will should be probated after the death of the testator, and the right to probate a will was not barred by any lapse of time, however great.  40 Cyc., 1255.

In this State, the re-probate of a will to supply defects existing in the original probate was permitted nineteen years after the said will was first undertaken to be proven.  *Grier* v. *Canada,* 119 Tenn., 17, 107 S. W., 970.

In *Grier* v. *Canada,* this court with approval quotes as follows:

"Mr. Prichard in the next section (323) enumerates instances in which the probate of wills has been revoked and the same will re-probated. The author, in section 324, then announces this rule: 'The time within which application for revocation of a probate must be made is probably limited to twenty years in the case of a will of personal estate; but there is probably no limitation in the case of a will of land'— . . . . citing *Townsend* v. *Townsend*, 4 Cold., 70, 94 Am. Dec., 185; *Gibson* v. *Lane*, 9 Yerg., 475. The same author in section 316 says: 'There was no limitation at common law, and very ancient wills have been admitted to probate; it being understood that not less than thirty years would bar a probate. . . . But, when there is a great delay in presenting a will for probate, its probation will not be allowed to affect the operation of the statute of limitations, so as to disturb vested rights protected by the running of the statute.' "

The probate of the Alsobrook will is not sought for the purpose of disturbing vested rights, but for complainants' protection.

Section 3955 of Shannon's Code fixes a limitation upon the time in which letters testamentary may be issued. It does not limit the period for probate.

The case of *Scott* v. *Wagstaff*, 120 Tenn., 252, 107 S. W., 976, is urged as authority for the contention that the complainants' bill herein is barred by the general statute of ten years. In *Scott* v. *Wagstaff*, a petition was filed in the county court to revoke or set aside the probate of a will, and this proceeding was held to

be barred by the ten years' statute. Under the will in controversy there, the petitioner took real estate, with certain limitations over in favor of contingent remaindermen. Had the testator's will been revoked and set aside, his daughter, petitioner, would have inherited the absolute fee. Petitioner was therefore attempting, by this proceeding, to recover something— to obtain a fee-simple title to land which she held in fee determinable. She was not seeking merely to protect and defend what she already possessed, but was endeavoring to acquire something additional. *Scott* v. *Wagstaff* therefore is readily distinguishable from the present case. It was not a suit in equity, and the proceedings therein were not of the character heretofore discussed, to which the ten years' statute does not apply.

The chancellor held that neither the statute of limitations nor the doctrine of laches had any application to the present case, and refused to submit these matters to the jury. In so doing, he was correct, and this determines the controversy.

All other questions made by the defendants have either been settled by the jury or are regarded by us as immaterial. We are of opinion complainants are entitled to have the will of N. T. Alsobrook set up as evidence, muniment, or color of title to their Mississippi land, and for no other purpose. Said will, so established, cannot now or hereafter be made the basis of any offensive operations or suits to recover

other portions of testator's estate, under any circum-
stances.

As just qualified, and for the reasons stated in this
opinion, we affirm the decree of the court of civil ap-
peals, with costs.