SHOOK v. SIMMONS, and three other cases.—137 S. W. (2d) 332.

Middle Section. November 13, 1939.

Petition for Certiorari denied by Supreme Court, February 17, 1940.

Harvey M. Templeton, of Winchester, and W. B. Lamb, of Fayetteville, for plaintiff in error.

A. T. Stewart, Chester C. Chattin, and J. B. Templeton, all of Winchester, and Joe Brown and W. D. Spears, both of Chattanooga, for defendants in error.

FELTS, J. Allen Shook, Gordon Alexander, and Mr. and Mrs. George Zimmerman, guests of T. C. Simmons in his automobile were injured when he ran the car off the highway down an embankment; and they brought these suits against him to recover for their injuries. The suits were tried together, resulting in verdicts and judgments for plaintiffs in these amounts: Allen Shook $3,000, Gordon Alexander $2,000, Mrs. George Zimmerman $2,000, and George Zimmerman $500. Simmons appealed in error and has assigned errors.

He insists that verdicts should have been directed for him because there was no evidence that he was negligent, and because plaintiffs were guilty of contributory negligence.

The accident happened about 8:30 P. M. September 12, 1937, on the highway between Cleveland and Chattanooga. Simmons, Shook and Alexander lived in or near Winchester, Franklin County, Tennessee, and Mr. and Mrs. Zimmerman had formerly lived there but were then living in Chattanooga. On the afternoon of September 12, 1937, which was Sunday, Simmons invited Shook and Alexander to accompany him in his car to Cleveland, Tennessee, to attend a meeting of the Church of God. On the way there they stopped at the home of the Zimmermans in Chattanooga; and Simmons invited the Zimmermans to accompany them to the meeting, which they did. As they were returning to Chattanooga, and when they had reached a point about 12 miles north of Chattanooga, the accident occurred.

The car, a two seated Ford, was being driven by Simmons. Alex-

ander was on the front seat and Shook and the Zimmermans were on the rear seat. The highway was straight and level. Its paved surface was 18 feet wide. On the right there was a smooth, solid shoulder 12 or 15 feet wide and on the left a shoulder 10 feet wide. The only witnesses as to what happened just before and at the moment of the accident are the plaintiffs themselves. The defendant did not take the stand and did not offer any evidence to dispute the plaintiffs' version of the occurrence. According to their testimony, the Zimmermans and Shook were on the rear seat engaged in a discussion or argument about the activities of the American Legion Post at Winchester, when Simmons "turned around a little," took his hand off the steering wheel, and said to them, "Oh, cut out that argument." At this instant the car, going 65 or 70 miles per hour, suddenly overtook an automobile which they had been following and which was stopping or had stopped on the pavement. Also another car was coming from the opposite direction meeting the Simmons car. He swerved his car sharply to his right, but without checking its speed or putting on its brakes, and ran off the pavement across the shoulder down an embankment four or five feet high, landing in a field. All the parties were injured, but Simmons less than the rest of them. No question is made as to the extent of plaintiffs' injuries or the amounts of the verdicts.

 There is no suggestion that the accident was due to any defect in defendant's car. It was apparently in perfect mechanical condition. The headlights and rear lights were burning on the car he was overtaking, and could have been seen by him from the time he approached within 500 feet of it. If it stopped suddenly when he was too close on it to stop, there was room for him to have safely passed to the right of it on the shoulder, which was smooth, solid and 12 or 15 feet wide. In the absence of any explanation from defendant, we think the only reasonable inference is that, as he was overtaking the other car at a speed of 65 or 70 miles per hour, he withdrew his attention from the road, and upon seeing the car immediately in front of him occupying the right half of the pavement and the other car coming on his left half, he lost control of his car and swerved off the embankment; and that he was thus guilty of negligence which was the proximate cause of plaintiffs' injuries. Lea v. Gentry, 167 Tenn., 664, 73 S. W. (2d), 170; Rice-Stix D. G. Co. v. Self, 20 Tenn. App., 498, 511, 101 S. W. (2d), 132, 141. That defendant was confronted with an emergency does not excuse him because his own negligence created the emergency. Cullom v. Glasgow, 3 Tenn. App., 443; Chumley v. Anderton, 20 Tenn. App., 621, 103 S. W., 331; 5 Am. Jur., 600, 601.

 We do not think it can be adjudged, as a matter of law, that plaintiffs were guilty of contributory negligence. The only defense which defendant undertook to support by proof below was that he

and plaintiffs were all drunk and that they were guilty of contributory negligence in riding with him in that condition. Schwartz v. Johnson, 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323; Hicks v. Herbert, 173 Tenn., 1, 113 S. W. (2d), 1197. It is true defendant did not testify himself, but he produced five witnesses who said all the occupants of the car were drunk or appeared to have been drinking. However, plaintiffs denied this and said none of the occupants had taken a drink on the journey. But the jury settled this issue in favor of plaintiffs and we are precluded from looking to it. The matter now relied on as contributory negligence is that plaintiffs were riding with defendant while he was driving at a speed of 65 or 70 miles per hour. It is said that it was their duty to protest and, if necessary, to get out. We find nothing in the evidence to support this insistence. On the way to Cleveland defendant seems to have driven at a proper rate of speed and with due care. At least nothing to the contrary appears in the evidence. On the way back Alexander had been driving. The parties stopped at a filling station, Alexander and Shook went in for a Coca Cola, and defendant took the wheel. He had driven only three or four miles when the accident happened. It is true at that moment he was driving at a rate of 65 or 70 miles per hour, but there is nothing to indicate that he had been driving fast for any perceptible time before that, except that Alexander, who was on the front seat with him said, "T. C. aren't we traveling pretty fast?" To this defendant replied that he "had it under control." This was only a few moments before the accident. It was dark, the highway was of concrete surface and was smooth, and there was nothing about the driving that attracted the attention of those on the rear seat, except that Mr. and Mrs. Zimmerman did hear this remark of Alexander. Under these circumstances, we think, it was a question for the jury whether plaintiffs were exercising proper care for their safety. Dedman v. Dedman, 155 Tenn., 241, 291 S. W., 449; Lea v. Gentry, 167 Tenn., 664, 73 S. W. (2d), 170; Renfro v. Keen, 19 Tenn. App., 345, 89 S. W. (2d), 170.

For these reasons we think defendant's motion for a directed verdict was properly denied. This disposes of his first three assignments of error.

The fourth assignment is: "The court erred in overruling the sixth ground of plaintiff in error's motion for a new trial, which was as follows: 'The court erred in directing the jury to return a verdict in favor of the plaintiffs on the question of liability.'" The record shows the trial judge did not direct the jury to return a verdict in favor of plaintiffs on the question of liability. He overruled motions for directed verdicts made by defendant and by plaintiffs at the close of the evidence, and submitted the cases to the jury under his general charge. This assignment is doubtless directed to some portion of the charge, but it fails to comply with Rule 11 of this court, which

provides: ''When the error alleged is upon the charge of the court, the part complained of, whether it be instructions given or instructions refused, shall be set out.'' Williams Code, Vol. 7, page 546. No part of the charge is set out in this assignment of error, in the brief or argument supporting the assignment. This assignment is therefore insufficient to present any question for consideration by this court. Hot Blast Coal Co. v. Williax, 10 Tenn. App., 226; Nashville, C. & St. L. R. Co. v. Mayo, 14 Tenn. App., 28.

Defendant's last assignment is that the court erred in not granting him a new trial on account of newly discovered evidence. From affidavits, submitted in support of the motion for a new trial, it appears that the newly discovered evidence was that C. B. Smith and three young ladies were out riding in Smith's automobile on the night of the accident, stopped at the scene, saw the car down in the field, saw three men sitting in it, one on the rear seat and two on the front seat; that these men had the odor of whiskey about them and seemed to be drunk; and that Smith and his companions brought one of these men, whom they learned to be Alexander, to the hospital.

Affidavits of defendant himself and Mr. John C. Goins, one of the attorneys who appeared for him in circuit court, were also offered in support of the motion for a new trial. The substance of the affidavit of counsel is that he had been making every possible effort to learn of the whereabouts of C. B. Smith and the others in the car with Mr. Smith, but had been unable to do so until after the trial. The substance of defendant's affidavit was that he had insurance and left it to his insurer's attorneys to prepare and try these cases; that he did not know Smith or the young ladies with Smith and did not know they had been present at the scene of the accident until after the trial; and that he did not testify at the trial because the attorneys for the insurance company defending these suits did not believe it would be to the interest of their client for him to testify.

It seems clear that this newly discovered evidence was merely cumulative. Five witnesses had testified on the trial for defendant that he and plaintiffs were drunk or had been drinking. These witnesses were Claude Capley, a deputy sheriff who investigated the accident and saw plaintiffs and defendant before they were removed from the scene of the accident, Andrew Walker who was also present and saw defendant and plaintiffs at the scene of the accident, F. G. Lee, the ambulance driver who took Simmons and Shook to the hospital, Dr. Moore J. Smith and Dr. M. O. Hinds who rendered first aid to Alexander and Shooks when they reached the hospital. The record discloses that another deputy sheriff who had been with Capley at the scene of the accident and had gone to the hospital to see Shook, Alexander and Simmons, was under subpoena and present at the trial but was not put on the stand. It also appears that there were several other persons at the place of the accident before the parties were removed.

690

About the only point which defendant offered proof to establish on the trial was that all the parties in Simmons' car were drunk. This newly discovered evidence related only to this matter, and was merely cumulative. We think the trial judge did not abuse his discretion in refusing to grant a new trial to let in this cumulative evidence. Tabler v. Connor, 60 Tenn. (1 Baxt.), 195, 196; Southwestern Transp. Co., Inc., v. Waters, 168 Tenn., 596, 79 S. W. (2d), 1028.

All of the assignments of error are overruled, the judgments of the circuit court are affirmed, and judgments will be entered in this court against defendant and in favor of each of the plaintiffs in the same amounts as the judgments below, together with interest from the date of such judgments. Defendant T. C. Simmons and his surety on his appeal bond will pay the costs of these appeals in error.

Faw, P. J., and Crownover, J., concur.