IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2025

## WILLIAM KENNETH WADE v. ROBERT CROSSLIN

**Appeal from the Chancery Court for Marshall County**
**No. 19978**             **J. B. Cox, Chancellor**

_____

**No. M2024-01891-COA-R3-CV**

_____

This is an appeal from a will contest wherein the decedent executed the will at the hospital where he was a patient. Two hospital employees signed the will as attesting witnesses, and their signatures were then notarized by another staff member. After the decedent died, his son contested the validity of the will, and the matter was set for a hearing. The proponent of the will attempted to serve subpoenas on the two attesting witnesses at the hospital where they signed the will, one by process server and the other by certified mail. Neither attempt at service was successful, and consequently, neither of the attesting witnesses appeared at the will contest hearing. The notary did appear and testified as to the identity and presence of the attesting witnesses at the will's execution. The proponent of the will sought to have both witnesses declared unavailable. The trial court declared unavailable the witness who was served using a process server but declined to do the same regarding the witness who was served by certified mail. Consequently, the court determined that the will was invalid. The proponent of the will appealed, asserting that the trial court abused its discretion when it made a distinction between serving a subpoena using a process server and serving a subpoena by certified mail. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JEFFREY USMAN and VALERIE L. SMITH, JJ., joined.

Timothy P. Underwood, Pulaski, Tennessee, for the appellant, Robert Crosslin.

Clifton B. Sobel, Jr., Murfreesboro, Tennessee, for the appellee, William Kenneth Wade.

**OPINION**

## I. Factual and Procedural Background

The facts in the underlying action are undisputed. On December 23, 2021, Robert Curtis Wade ("Decedent") executed a last will and testament ("the Will") at Ascension St. Thomas Rutherford Hospital ("Ascension"), where Decedent was a patient at the time. The Will had been prepared by an attorney who had worked with Decedent's family over the years. In the Will, Decedent appointed Robert Crosslin, a family friend, as executor and personal representative of Decedent's estate and named Decedent's longtime companion, Patsy Wright, as a beneficiary. Two nurses at Ascension, Lindsey Strange and Jasmine Fults, were physically present when Decedent signed the Will, and they accordingly signed the Will as attesting witnesses. Kimberly Palmiter, a notary public and employee at Ascension, was also present for the signing of the Will and notarized the witnesses' signatures.

Decedent died on January 30, 2022, and the Will was probated on March 16, 2022, in the Marshall County Chancery Court ("trial court"). On June 1, 2023, Decedent's son, William Kenneth Wade, filed a "Complaint to Contest the Last Will and Testament of Robert Curtis Wade," alleging that Decedent was "incompetent and lacked capacity" at the time the Will was executed. Mr. Wade further alleged that the substantive provisions of the Will were the result of undue influence on the part of Ms. Wright, who was also present in Decedent's hospital room when the Will was executed.

Mr. Crosslin, in his capacity as executor and personal representative for Decedent's estate, filed an answer to the complaint in January 2024, denying the allegations therein. Mr. Crosslin subsequently filed an amended answer, alleging as an affirmative defense that Mr. Wade did not have standing to contest the Will because he was "not a biological child of the Decedent" and requesting that the trial court order Mr. Wade to undergo DNA testing to establish his blood relationship to Decedent. Mr. Wade denied this allegation in a response and attached his birth certificate. Decedent's name was listed on the birth certificate as Mr. Wade's father. On June 6, 2024, the trial court denied Mr. Crosslin's request to order Mr. Wade to undergo DNA testing.

The Will contest hearing was initially set for September 30, 2024. On June 25, 2024, identical subpoenas were issued as to the attesting witnesses, Ms. Strange and Ms. Fults, at "1700 Medical Center Parkway, Murfreesboro, TN 37129," the address for Ascension. Each of the subpoenas is accompanied in the record by a "certified mail receipt," postmarked on August 21, 2024.

Upon motion by Mr. Wade, the hearing was continued to November 4, 2024. In the months leading to the November 2024 hearing, the parties continued discovery, which included the re-issuance of the subpoenas for the attesting witnesses, Ms. Strange and Ms. Fults. The subpoenas were issued on October 16, 2024, listing the Ascension address as

before.  Concerning the subpoena issued as to Ms. Fults, neither the sheriff's office nor any attorney had filled out the "Return" portion of the subpoena, and the section was left blank. Regarding the subpoena issued as to Ms. Strange, the "Sheriff's Return" portion of the subpoena had been filled out by a process server on November 1, 2024.  The process server had checked the box on the subpoena that included the words, "unable to serve because," and added in handwriting: "could not be found[,] unable to serve.  Attempted to call several times."  Ultimately, neither witness was successfully served with a subpoena and neither appeared for the Will contest hearing.

During the hearing, the trial court considered the proof concerning Decedent's execution of the Will at Ascension, which included a copy of the Will, copies of the un-served subpoenas, and testimony from the notary, Ms. Palmiter.[1]  Ms. Palmiter testified that she was familiar with Ms. Strange and Ms. Fults, who had both worked at Ascension as nurses during Decedent's time there.  Ms. Palmiter explained that Ms. Strange had served as Decedent's primary nurse and that Ms. Fults had occasionally worked on Decedent's floor at the hospital.  Ms. Palmiter verified that Ms. Strange and Ms. Fults had served as attesting witnesses to the Will.

On November 22, 2024, the trial court entered a "Memorandum and Order on Due Execution," sustaining the will contest after determining that Mr. Crosslin had failed to meet his burden of proving due execution of the Will.  Specifically, the court determined that Mr. Crosslin had failed to prove that one of the witnesses—Ms. Fults—was "not able to be found."  By contrast, the trial court accepted that Ms. Strange could not be found and declared her an unavailable witness.  Having determined that one of the attesting witnesses could not be declared unavailable, the trial court did not reach the substantive issues of the will contest and revoked the Will.  In a subsequent order, the trial court awarded to Mr. Wade his attorney's fees in the amount of $26,400.00 and discretionary costs in the amount of $3,133.15, to be payable from Decedent's estate.  Mr. Crosslin timely appealed.

## II.  Issue Presented

Mr. Crosslin has raised the following issue on appeal:

Whether the trial court erred in failing to declare an attesting witness to Decedent's Will unavailable.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of

---

[1] The record does not include a transcript of the hearing that was conducted on November 4, 2024. However, Mr. Crosslin filed an unopposed "Designation of Appellate Record and Statement of the Evidence," which includes information about the testimony and evidence presented at trial.

correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). To the extent that the trial court's determinations rest upon an assessment of the credibility of witnesses, the determinations will not be overturned absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Statutory construction is a matter of law; therefore, our standard of review concerning interpretation of a statute is *de novo* with no presumption of correctness. *See Lavin v. Jordan*, 16 S.W.3d 362, 364 (Tenn. 2000). "When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language." *Khan v. Regions Bank*, 584 S.W.3d 418, 429 (Tenn. Ct. App. 2019) (citing *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 101-02 (Tenn. 2006)).

A trial court's determination as to whether a witness to a will is available or can be found is reviewed for an abuse of discretion. *See In re Estate of Woolverton*, No. W2013-00517-COA-R3-CV, 2014 WL 346655, at *5 (Tenn. Ct. App. Jan. 30, 2014) (citing *Swindoll v. Jones*, 292 S.W.2d 531, 541 (Tenn. 1954)). Regarding the abuse of discretion standard, our Supreme Court has explained:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).
>
> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its

discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010). "In reviewing a trial court's discretionary decisions, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *In re Estate of Link*, 542 S.W.3d 438, 451 (Tenn. Ct. App. 2017) (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

## IV. Unavailable Witness

Mr. Crosslin's sole issue on appeal is whether Ms. Fults, as an attesting witness to the Will, was unavailable as defined by statute. Mr. Crosslin asserts that the trial court erred by declining to declare Ms. Fults unavailable. Mr. Wade counters that there was "no evidence" presented at trial that Ms. Fults was truly unavailable and asserts that Mr. Crosslin failed to offer proof of "any reasonable efforts to locate the witness."

The requirements for proving that a contested will is valid are set forth in Tennessee Code Annotated §§ 32-2-104 and 32-4-105. Section 32-2-104(a) (West October 1, 2007, to current) provides that a last will and testament

when contested, shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it.

Similarly, § 32-4-105(a) (West July 1, 2022, to current) provides that at a trial concerning a "written will with witnesses," the will "shall be proved by all the living witnesses, if to be found, and by such other persons as may be produced to support it."

The record demonstrates that Mr. Crosslin had attempted to serve subpoenas on both purported attesting witnesses—Ms. Strange and Ms. Fults—at Ascension but that for reasons unknown, he had initiated the service by different means. He had employed a process server to deliver the subpoena to Ms. Strange but had attempted to serve Ms. Fults by certified mail. Neither method of service was successful; therefore, neither witness appeared at trial. The subpoena for Ms. Strange was returned by the process server with the words, "could not be found," written on the "Sheriff's Return" portion of the document, and the subpoena for Ms. Fults was returned with nothing written in the "Sheriff's Return" or "Attorney's Return of Service" portions of the document. The certified mail envelope containing Ms. Fults's subpoena was stamped with the words: "Return to Sender: Not at This Address." As stated above, neither witness was successfully served with a subpoena and neither appeared at trial.

This Court has interpreted the language of § 32-4-105 as requiring "either the testimony of all living witnesses to the will or a finding that a living witness whose testimony is not proffered is not 'to be found[.]'" *In re Estate of Woolverton*, 2014 WL 346655, at *5. The proponent of a contested will bears the burden of proving at trial that the will was duly executed, which includes either presenting all living witnesses or proving that said witnesses are unavailable. *See id.* at *4; Tenn. Code Ann. § 32-4-105. Hence, because neither attesting witness appeared before the trial court, the burden of proving that Ms. Fults was an unavailable witness fell to Mr. Crosslin, as executor and proponent of Decedent's Will. *See In re Estate of Woolverton*, 2014 WL 346655, at *4.

In its final order, the trial court noted the statutory requirements for proving due execution of a contested will and undertook an historical analysis of said requirements, noting that "Tennessee has zealously guarded the statutory requirements necessary for a Will to have been validly executed." The trial court then found that Ms. Strange was an unavailable witness but declined to declare Ms. Fults unavailable, reasoning as follows:

> In the case at bar, five people were in the room when the document was executed. Two were there for the purpose of witnessing the Will. They signed their names as witnesses to the Will. One person, the notary, was there for the purpose of notarizing the signatures of the testator and the witnesses, which she accomplished, even leading the others through the process to an extent. Lastly, there was a person present who was taking under

- 6 -

the purported Will.

Neither the notary nor the person taking under the proposed Will are witnesses to the Will as contemplated by the statute. They are not initially eligible to testify concerning due execution of the Will. The witnesses, if they can be found and are available, are to testify as to the execution. Neither of the two people who signed their names attesting to the Will testified in the hearing. [Mr. Wade] contends that we do not even really know the identity of the witnesses to the Will. He further asserts that [Mr. Crosslin] has failed even in his initial burden of proving due execution because he cannot prove who the witnesses were.

Alternatively, [Mr. Wade] asserts that [Mr. Crosslin] has failed in his burden to prove due execution of the Will because he has not proven the Will by any of the witnesses. He further asserts that even if the Court can find that one of the witnesses cannot be found, the Court cannot hold that the other witness could not be found. The difference between the record and the argument belies the complexity and difficulty associated with executing a Will in a hospital while a person is sick, without the presence and guidance of an attorney to shepherd the process.

In the case at bar, the Court is comfortable in finding that one of the witnesses, Lindsey Strange, cannot be found as contemplated by the statute. The record reflects that a subpoena was issued, that it was attempted to be served by a private process server who wrote, "could not be found" on the face of the subpoena and returned it as unserved.

Conversely, [Mr. Crosslin] cannot make as convincing an argument about the other witness, Jasmine Fults. Counsel stated that the other witness was a "traveling" nurse who, during COVID, worked at the hospital where [Decedent] was located, and was nowhere to be found now. Statements of counsel are not evidence. [Mr. Crosslin] attempted to serve this witness at the hospital where she witnessed the Will, knowing that she was a temporary employee and was no longer employed by that hospital. [Mr. Crosslin] has not sufficiently proven that the second witness cannot be found.

[Mr. Crosslin] argues that the Will should be saved by the testimony of the notary and cites a case where that was allowed. The factual distinction between that case and the case at bar is that all of the witnesses were dead in the case cited by [Mr. Crosslin] and therefore were shown to be unavailable. Once their unavailability was established, the signatures of the witnesses and the testator were proved by witnesses who were familiar with the handwriting of each. *See Weaver v. Hughes*, 173 S.W.2d 159, 162-163 (Tenn Ct. App.

1943) and *In Re Estate of Woolverton*, No. W2013-00517-COA-R3-CV, 2014 WL 346655 at *5-6 and the cases cited therein.

Caselaw does contemplate the possibility of saving a Will when none of the witnesses to the Will can testify. What is required is proof of the handwriting of the testator and the witnesses, in addition to proof that the witnesses cannot be found. *Parker v. West*, 29 Tenn. App. 642, 645, 199 S.W.2d 928, 929 (Tenn. Ct. App. 1946). However, in this case, [Mr. Crosslin] failed to prove that one of [the] witnesses could not be found, therefore, we do not need to proceed to the proof regarding the handwriting of [Decedent] and the witnesses by those familiar with the writing of those parties.

[Mr. Crosslin] has failed to meet [his] burden of proving due execution of the Will. Therefore, the Will contest is sustained. The previous Letters Testamentary are hereby revoked.

On appeal, Mr. Crosslin posits that the trial court committed reversible error when it "made a distinction between the service of a subpoena by a process server and one by certified mail." Mr. Crosslin argues that by concluding that Mr. Crosslin had failed to prove that Ms. Fults could not be found, the trial court applied a more "rigorous" standard to the effort to subpoena Ms. Fults by certified mail than it did to the effort to serve Ms. Strange through a process server. We disagree. Service on each witness was attempted by different means. Although the trial court, in its discretion, accepted one attempt and rejected the other, that does not equate to a more "rigorous" standard for one over the other. The trial court determined that Mr. Crosslin's attempt to serve Ms. Fults at Ascension, when she was known to be a "traveling nurse" and to be "no longer employed" by Ascension, was insufficient. Mr. Crosslin's argument that the trial court applied differing standards to the service of each subpoena is unavailing.

Furthermore, upon careful review, we determine that the trial court did not abuse its discretion when it declined to declare Ms. Fults an unavailable witness. *See Swindoll*, 292 S.W.2d at 541. Sections 32-2-104 and 32-4-105 plainly and clearly require that when a will is contested, at the contest hearing the will "shall be proved by all the living witnesses, if to be found" (emphasis added); *see Khan*, 584 S.W.3d at 429 ("When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language."). Because neither of the attesting witnesses was present during the hearing to prove the validity of the Will, Mr. Crosslin, as the Will's proponent, bore the burden to prove that the witnesses were unavailable. *See* § 32-4-105(a); *In re Estate of Woolverton*, 2014 WL 346655, at *4. After hearing and considering Mr. Crosslin's proof—including the testimony of Ms. Palmiter and the subpoenas for each witness—the trial court exercised its discretion to determine that Mr. Crosslin had not met his burden to prove that Ms. Fults was unavailable. *See In re Estate of Woolverton*, 2014 WL 346655, at *4; *Swindoll*, 292

S.W.2d at 541.  In so doing, the trial court properly and thoroughly considered the plain statutory language and relevant case law and applied the authority to the facts.  *See Lee Med., Inc.*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)) ("Discretionary decisions must take the applicable law and the relevant facts into account.").  We will not "second guess" the court's decision on this point.  *See Lee Med., Inc.*, 312 S.W.3d at 524.  Accordingly, we affirm the trial court's determination that the Will could not be proven because Mr. Crosslin had failed to meet his burden to show that Ms. Fults was an unavailable witness.

## V.  Conclusion

For the foregoing reasons, we affirm the trial court's November 22, 2024 "Memorandum and Order on Due Execution" in all respects.  This matter is remanded to the trial court for enforcement of the judgment and collection of costs below.  Costs on appeal are assessed to the appellant, Robert Crosslin, as personal representative for the estate of Robert Curtis Wade.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE